### UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **KIMBERLIN EDWARDS** | **CIVIL ACTION** |
| **VERSUS** | **NO.  13-0645** |
| **JIM ROGERS, WARDEN** | **SECTION "H"(4)** |

### REPORT AND RECOMMENDATION

This matter was referred to a United States Magistrate Judge to conduct hearings, including an evidentiary hearing if necessary, and to submit proposed findings and recommendations pursuant to **28 U.S.C. § 636(b)(1)(B) and (C)**, and as applicable, **Rule 8(b) of the Rules Governing Section 2254 Cases**.  Upon review of the entire record, the Court has determined that this matter can be disposed of without an evidentiary hearing.  *See* 28 U.S.C. § 2254(e)(2) (2006).[1]

## I.   Factual Background

The petitioner, Kimberlin Edwards ("Edwards"), is a convicted inmate incarcerated in the Louisiana State Penitentiary in Angola, Louisiana.[2]  On December 9, 2008, Edwards was indicted by a St. Tammany Parish Grand Jury with one count of vehicular homicide and one count of possession of cocaine.[3]  She entered a plea of not guilty to the charges on January 27, 2009.[4]

The record reflects that the State intended to prove that, on October 20, 2008, which was a bright, clear day, Edwards was driving a white Buick Rendezvous on Donya Drive in St. Tammany

---

[1]Under 28 U.S.C. § 2254(e)(2), an evidentiary hearing is held only when the petitioner shows that either the claim relies on a new, retroactive rule of constitutional law that was previously unavailable or a factual basis that could not have been previously discovered by the exercise of due diligence and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner.

[2]Rec. Doc. 1.

[3]St. Rec. Vol. 1 of 3, Indictment, 12/9/08 (as amended 7/27/09); Grand Jury Return, 12/9/08; Minute Entry, 7/27/09.

[4]St. Rec. Vol. 1 of 3, Minute Entry, 1/27/09.

Parish.[5]  She did not, however, have a license to drive.  In addition, at the time, she was out of jail

on bond following an arrest for possession of cocaine in St. Tammany Parish and another arrest for

possession of stolen property in Orleans Parish.

Roland Withers, a 53 year old man, was operating a motorized wheelchair along the side or

shoulder of Donya Drive.  The wheelchair was equipped with reflectors, and it was being lawfully

operated by Withers.  Edwards struck Withers from behind and drove the car over him, dragging him

and his wheelchair underneath the carriage of the vehicle.  The debris showed that she dragged him

for about one and one-half blocks driving from one side of the road to the other before her vehicle

flipped over and came to rest in a ditch.

Upon exiting the vehicle, Edwards asked passers-by to give her a ride away from the scene

to no avail.  The sheriff's deputies soon arrived, and located Edwards approximately fifty yards

down the road from the car.  She was detained and given an Intoxilyzer test, at which time her breath

showed a .095 blood alcohol level approximately one hour after the accident.  Her car also was

impounded and searched.  The deputies found cocaine and marijuana inside of the car, in addition

to one open beer can which was linked to Edwards through DNA analysis.

The impact and dragging destroyed most of Withers's internal organs and all but about three

of his ribs.  His spine was severed at T4, and he was pronounced dead at the scene.

Edwards was called to trial on August 17, 2009, and a jury was selected.[6]  Prior to the start

of trial the next day, August 18, 2009, Edwards withdrew her prior plea of not guilty and entered

---

[5]The facts were taken from the police report and factual basis provided to the Court by the State prior the Court's acceptance of Edwards's guilty pleas in this case. St. Rec. Vol. 1 of 3, Police Narrative Continuation, 10/29/08; Plea Transcript, pp. 119-20, 8/18/09.

[6]St. Rec. Vol. 1 of 3, Trial Minutes, 8/17/09.

a plea of guilty to vehicular homicide and possession of cocaine.[7]  After waiver of legal delays, the Court sentenced Edwards to serve seventeen (17) years in prison at hard labor for vehicular homicide, with the first five (5) years to be served without benefit of parole, and five (5) years in prison at hard labor for possession of marijuana, with the sentences to run concurrently.[8]

At a hearing held January 11, 2010, Edwards admitted the allegations in the State's multiple offender bill of information, and after waiver of sentencing delays, the Court vacated the prior sentences.[9]  The Court then resentenced Edwards as a fourth felony offender to concurrently serve thirty-five (35) years in prison on each count without benefit of parole, probation, or suspension of sentence.[10]  On February 1, 2010, the Court amended its minutes to remove the parole prohibition on count two (2).[11]  The Court denied Edwards's later-filed motion to clarify the sentences, and granted her motion to have these sentences run concurrently with her sentences from other cases.[12]

On direct appeal, Edwards's appointed counsel argued that the sentence imposed for vehicular homicide was illegally excessive because of the restriction to parole eligibility.[13]  On September 14, 2011, the Louisiana First Circuit Court of Appeal found that the restriction was

---

[7]St. Rec. Vol. 1 of 3, Plea Minutes, 8/18/09; Plea Transcript, 8/18/09.  The Court also entertained and accepted a plea of guilty to a charge of possession of marijuana charged in a separate case against Edwards.

[8]*Id.*

[9]St. Rec. Vol. 1 of 3, Multiple Bill Hearing Minutes, 1/11/10; Multiple Bill Hearing Transcript, p. 143, 1/11/10; Multiple Bill, 8/18/09.

[10]St. Rec. Vol. 1 of 3, Multiple Bill Hearing Transcript, p. 143, 1/11/10; Reasons for Judgment, 2/1/10.

[11]St. Rec. Vol. 1 of 3, Minute Entry, 2/1/10.

[12]St. Rec. Vol. 1 of 3, Motion to Clarify Sentences, 12/16/10; Trial Court Order, 12/30/10; St. Rec. Vol. 2 of 3, Motion to Run Sentences Concurrent, 1/11/11 (dated 1/5/11); Trial Court Order, 6/8/12.

[13]St. Rec. Vol. 3 of 3, Appeal Brief, 2011-KA-447, 4/4/11.  Edwards also moved for an out-of-time appeal which the Trial Court denied as moot in light of the pending appeal.  St. Rec. Vol. 1 of 3, Motion for Out-of-Time Appeal, 12/17/10 (dated 12/16/10).

statutorily authorized, and affirmed Edwards's convictions, habitual offender adjudications, and sentences.[14]

The Louisiana Supreme Court denied Edwards's related writ application without stated reasons on February 10, 2012.[15]  Her convictions and sentences became final 90 days later, on May 10, 2012, because she did not file a writ application with the United States Supreme Court.  *Ott v. Johnson*, 192 F.3d 510, 513 (5th Cir. 1999) (period for filing for certiorari with the United States Supreme Court is considered in the finality determination under 28 U.S.C. § 2244(d)(1)(A)); U.S. S. Ct. Rule 13(1).

On May 14, 2012, Edwards submitted an application for post-conviction relief to the Trial Court asserting three grounds for relief:[16] (1) she was denied effective assistance of counsel where counsel failed to produce evidence to establish her prior conviction was invalid, induced her to enter a plea under false pretenses and promises that she would not be multiple billed, and failed to investigate the evidence related to the plea, sentencing, and multiple bill proceedings; (2) she was subjected to prosecutorial misconduct where the State failed to notify the defense of material exculpatory evidence and presented false evidence to obtain a conviction; (3) the State relied on false and insufficient evidence at the multiple offender adjudication; and (4) the cumulative errors in her conviction and sentencing render her convictions unreliable.

---

[14]*State v. Edwards*, 90 So.3d 545 (La. App. 1st Cir. 2011) (Table); *State v. Edwards*, No. 2011-KA-0447, 2011 WL 4507066, at *1 (La. App. 1st Cir. Sep. 14, 2011); St. Rec. Vol. 2 of 3, 1st Cir. Opinion, 2011-KA-0447, 9/14/11.

[15]*State v. Edwards*, 80 So.3d 471 (La. 2012); St. Rec. Vol. 3 of 3, La. S. Ct. Order, 2011-KO-2120, 2/10/12; La. S. Ct. Writ Application, 11-KO-2120, 9/28/11 (dated 9/23/11).

[16]St. Rec. Vol. 2 of 3, Memorandum in Support of Application for Post-Conviction Relief, 5/16/12 (dated 5/14/12).

After receiving additional briefing from the State and Edwards,[17] on July 5, 2012, the Trial Court denied the application finding that Edwards's claims related to the habitual offender proceedings were barred from post-conviction review under La. Code Crim. P. art. 930.3. The Court also held that Edwards failed to meet her burden of proof on the remaining claims.[18]

The Louisiana First Circuit and the Louisiana Supreme Court each denied Edwards's subsequent writ applications without stated reasons September 12, 2012, and February 22, 2013, respectively.[19]

## II.   **Federal Petition**

On April 9, 2013, the clerk of this Court filed Edwards's federal petition for habeas corpus relief in which she raised the following grounds for relief:[20] (1) the sentence imposed for vehicular homicide is excessive; (2) she was denied effective assistance of counsel where counsel (a) failed to produce evidence to establish her prior conviction was invalid (and the state trial court failed to advise of her rights prior to accepting the plea to the multiple bill), (b) induced her to enter a plea under false pretenses and promises that she would not be multiple billed, and (c) failed to investigate the evidence related to the plea, sentencing, and multiple bill proceedings; (3) she was subjected to prosecutorial misconduct where the State failed to notify the defense of material exculpatory evidence and presented false evidence to obtain a conviction; (4) the State relied on false and insufficient evidence at the multiple offender adjudication; (5) the cumulative errors in her

---

[17]St. Rec. Vol. 2 of 3, State's Answer, 6/19/12; Reply to State's Answer, 6/26/12.

[18]St. Rec. Vol. 4 of 5, Order and Reasons, 7/29/11.

[19]*State ex rel. Edwards v. State*, 108 So.3d 764 (La. 2013); St. Rec. Vol. 3 of 3, La. S. Ct. Order, 2012-KH-2114, 2/22/13; La. S. Ct. Writ Application, 12-KH-2114, 9/26/12 (postmarked and dated 9/20/12); 1st Cir. Order, 2012-KW-1281, 9/12/12; 1st Cir. Writ Application, 2012-KW-1281, 7/28/12 (dated 7/25/12).

[20]Rec. Doc. No. 1.

conviction and sentencing render her convictions unreliable; and (6) the state courts violated her constitutional rights in refusing to consider her ineffective assistance of counsel claims on post-conviction review.

The State filed an answer and memorandum in opposition to Edwards's petition conceding that the petition was timely filed.[21]   The State argues, however, that Edwards's sixth claim challenging the procedural denial of her ineffective assistance of counsel claim, was not raised to any state court and is not exhausted.   In addition, the State argues that Edwards's fourth claim, insufficient evidence at the multiple bill proceeding, and part of her second claim, ineffective assistance of counsel at the multiple bill proceeding, are in procedural default.   The State further argues that these and the remaining claims are otherwise without merit.

## III.   <u>General Standards of Review</u>

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214,[22] applies to this petition, which is deemed filed in this court under the federal mailbox rule on April 3, 2013.[23]   The threshold questions in habeas review under the amended statute are whether the petition is timely and whether the claim raised by the petitioner was

---

[21]Rec. Doc. Nos. 10, 11.

[22]The AEDPA comprehensively revised federal habeas corpus legislation, including 28 U.S.C. § 2254, and applied to habeas petitions filed after its effective date, April 24, 1996.  *Flanagan v. Johnson*, 154 F.3d 196, 198 (5th Cir. 1998) (citing *Lindh v. Murphy*, 521 U.S. 320 (1997)).  The AEDPA, signed into law on that date, does not specify an effective date for its non-capital habeas corpus amendments.  Absent legislative intent to the contrary, statutes become effective at the moment they are signed into law.  *United States v. Sherrod*, 964 F.2d 1501, 1505 n.11 (5th Cir. 1992).

[23]The Fifth Circuit has recognized that a "mailbox rule" applies to pleadings, including habeas corpus petitions filed after the effective date of the AEDPA, submitted to federal courts by prisoners acting pro se.  Under this rule, the date when prison officials receive the pleading from the inmate for delivery to the court is considered the time of filing for limitations purposes. *Coleman v. Johnson*, 184 F.3d 398, 401 (5th Cir. 1999); *Spotville v. Cain*, 149 F.3d 374, 378 (5th Cir. 1998); *Cooper v. Brookshire*, 70 F.3d 377, 379 (5th Cir. 1995).  The clerk of court filed Edwards's federal habeas petition on April 9, 2013, when pauper status was granted.  Edwards's dated her signature on the petition on April 3, 2013, which is the earliest date appearing in the record on which she could have delivered the pleadings to prison officials for mailing to the Court.

adjudicated on the merits in state court; *i.e.*, the petitioner must have exhausted state court remedies and must not be in "procedural default" on a claim. *Nobles v. Johnson*, 127 F.3d 409, 419-20 (5th Cir. 1997) (citing 28 U.S.C. § 2254(b), (c)).

The State concedes and the record confirms that Edwards's petition is timely filed. The State, however, argues that Edwards petition is a mixed petition, containing one unexhausted claims and that two of her claims are also procedurally barred from federal habeas review.

For the reasons discussed later in this report, the unexhausted claim is without merit. The Court therefore will address the claim without requiring full exhaustion. 28 U.S.C. § 2254(b)(2). The Court also will first address the procedurally defaulted claims before proceeding to the merits of the remaining claims.

## IV.    **Procedural Default (Claim Nos. 2(a),(c) and 4)**

The State recognizes that two of Edwards's claims are in procedural default, having been dismissed by the state courts as procedurally barred from post-conviction review under La. Code Crim. P. art. 930.3. Specifically, Edwards presented two claims on state post-conviction review related to the multiple offender proceeding, just as she does here. First, Edwards alleged that she received ineffective assistance of counsel at the multiple offender proceeding where counsel allowed her to enter the plea without first investigating the State's evidence and that the Trial Court accepted the plea and concession of her identity without first explaining her rights. Second, Edwards alleges that the State relied on false or insufficient evidence to obtain her plea to the multiple bill.

Generally, a federal court will not review a question of federal law decided by a state court if the decision of that state court rests on a state law ground that is both independent of the merits of the federal claim and adequate to support that judgment. *Coleman v. Thompson*, 501 U.S. 722,

731-32 (1991); *Glover v. Cain*, 128 F.3d 900, 902 (5th Cir. 1997), *cert. denied*, 523 U.S. 1125 (1998); *Amos v. Scott*, 61 F.3d 333, 338 & n.15 (5th Cir. 1995) (citing *Harris v. Reed*, 489 U.S. 255, 260, 262 (1989)).  The "independent and adequate state law" doctrine applies to both substantive and procedural grounds and affects federal review of claims that are raised on either direct or post-conviction review.  *Coleman*, 501 U.S. at 731-32; *Amos*, 61 F.3d at 338.  This type of procedural default will bar federal court review of a federal claim raised in a habeas petition when the last state court to render a judgment in the case has clearly and expressly indicated that its judgment is independent of federal law and rests on a state procedural bar.  *Harris*, 489 U.S. at 263; *Glover*, 128 F.3d at 902.

On post-conviction review, the Louisiana trial court held that Edwards's post-conviction claims arising from the multiple offender proceedings were not proper grounds for post-conviction review under La. Code Crim. P. art. 930.3.  The higher courts' denied Edwards's related writ applications, leaving this ruling to be the last reasoned decision for denial of relief on the issues.  *See Ylst v. Nunnemaker*, 501 U.S. 797, 802 (1991) (when the last state court judgment does not indicate whether it is based on procedural default or the merits of a federal claim, the federal court will presume that the state court has relied upon the same grounds as the last reasoned state court opinion).

The Court must consider whether the bar to review relied upon by the Louisiana courts prohibits consideration of the claims on federal habeas corpus review.  As discussed above, for a state-imposed procedural bar to prevent review by this federal habeas court, the bar must be both independent and adequate.

### A.    Independent State Grounds

A dismissal is independent of federal law when the last state court "clearly and expressly" indicated that its judgment rests on a state procedural bar.  *Amos*, 61 F.3d at 338.  In this case, the Trial Court denied relief on Edwards's claims arising from the multiple offender proceeding under La. Code Crim. P. art. 930.3.

The well settled doctrine in Louisiana under La. Code Crim. P. art. 930.3 and related case law prohibits challenges to sentencing errors, including ineffective assistance of counsel, on post-conviction review.  *See e.g.*, *State ex rel. Melinie v. State*, 665 So.2d 1172 (La. 1996); *State ex rel. Brown v. State*, 870 So.2d 976 (La. 2004); *Richardson v. Cain*, No. 07-2999, 2010 WL 1838642, at *11 (E.D. La. Apr. 1, 2010); *Wallace v. Cain*, No. 06-11271, 2009 WL 3367052, at *14 (E.D. La. Oct. 15, 2009) (Order adopting Report).  The Louisiana Supreme Court extended that doctrine to prohibit post-conviction review of habitual offender proceedings, including claims of ineffective assistance of counsel during that proceeding, excessive sentence and other sentencing errors.  *State v. Cotton* , 45 So.3d 1030 (La. 2010) (citing La. Code Crim. P. art. 930.3); *see also*, *State v. Thomas*, 19 So.3d 466 (La. 2009).  In doing so, the Louisiana Supreme Court specifically distinguished and noted that this post-conviction prohibition did not prevent a defendant from raising the sentencing and multiple bill proceedings errors on direct appeal of the sentencing judgment itself, citing La. Code Crim. P. art. 912(C)(1), which directs for such sentencing matters to be raised on direct appeal.

The state courts' rulings were based on Louisiana law setting forth the requirements for preservation and presentation of claims on appellate and post-conviction review.  These rulings were therefore independent of federal law and relied strictly on state procedural requirements.  *See e.g.*, *Bennett v. Whitley*, 41 F.3d 1581, 1583 (5th Cir. 1994); *Washington v. Cain*, No. 98-0584, 2000 WL 863980, at *4 (E.D. La. June 27, 2000); *see also*, *Harris*, 489 U.S. at 263; *Glover*, 128 F.3d at 902.

### B.   <u>Adequate State Grounds</u>

The question of the adequacy of a state procedural bar is itself a federal question.  *Beard v. Kindler*, 558 U.S. 53, 60 (2009) (citing *Lee v. Kemna*, 534 U.S. 362, 375 (2002)).  To be adequate, the state procedural rule must be strictly or regularly followed and evenhandedly applied to the majority of similar cases.  *Walker v. Martin*, __U.S.__, 131 S. Ct. 1120, 1127-28 (2011); *Glover*, 128 F.3d at 902.  A state procedural rule, however, "can be 'firmly established' and 'regularly followed,' - even if the appropriate exercise of discretion may permit consideration of a federal claim in some cases but not others." (citations omitted) *Beard*, 558 U.S. at 60.

In evaluating the adequacy of the rules applied to bar a petitioner's claim, a federal habeas court does not sit to correct errors made by state courts in interpreting and applying state law.  *Narvaiz v. Johnson*, 134 F.3d 688, 695 (5th Cir. 1998) (quoting *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) and *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990); and citing *West v. Johnson*, 92 F.3d 1385, 1404 (5th Cir. 1996)); *accord Turner v. Johnson*, 46 F. Supp. 2d 655, 674 (S.D. Tex. 1999).  Rather, a federal court's analysis focuses on due process considerations, and due process requires only that the Court grant the writ when the errors of the state court make the underlying proceeding fundamentally unfair.  *See Neyland v. Blackburn*, 785 F.2d 1283, 1293 (5th Cir. 1986) (citing *McAffee v. Procunier*, 761 F.2d 1124, 1126 (5th Cir. 1985) and *Lane v. Jones*, 626 F.2d 1296 (5th Cir. 1980)).  In keeping with this, a state procedural rule that is applied arbitrarily or in an unexpected manner may be considered inadequate to prevent federal review.  *Martin v. Maxey*, 98 F.3d 844, 847 (5th Cir. 1996); *Prihoda v. McCaughtry*, 910 F.2d 1379, 1383 (7th Cir. 1990).

> A federal court may not second-guess a state court's rule of procedure, but must evaluate whether the rule was actually applicable on the particular facts of the case. Otherwise, state courts could disregard federal rights with impunity simply by using the word "waived."

*United States ex rel. Bradley v. Clark*, No. 99-C-1785, 2002 WL 31133094, at *4 n.2 (N.D. Ill. July 18, 2002).

For this reason, when state courts apply a procedural bar that has no foundation in the record or basis in state law, the federal courts need not honor that bar. *See e.g.*, *Davis v. Johnson*, No. 00CV684-Y, 2001 WL 611164, at *4 n.10 (N.D. Tx. May 30, 2001); *Johnson v. Lensing*, No. 99-0005, 1999 WL 562728, at *4 (E.D. La. July 28, 1999) (Art. 930.8 bar was not adequate because it was not properly applied under the circumstances of the case); *Poree v. Cain*, No. 97-1546, 1999 WL 518843, at *4 (E.D. La. July 20, 1999) (Mentz, J.) (Art. 930.8 was not adequate to bar review because it was misapplied).

However, it is <u>not</u> within the federal court's province to disagree with the application of the bar; it is only to determine its adequacy. *Lee v. Cain*, No. 03-2626, 2004 WL 2984274, at *1 n.2 (E.D. La. Dec. 6, 2004) (Vance, J.) (addressing Art. 930.3 as applied to ineffective assistance of counsel claim). Thus, where such foundation and basis does exist, as it does in this case, the bar must stand.

As discussed above, the state trial court relied on well-settled Louisiana doctrine arising from La. Code Crim. P. art. 930.3 to bar review of Edwards's claims challenging her multiple offender proceedings, including ineffective assistance of counsel in that proceeding. The federal courts have repeatedly held that the La. Code Crim. P. art. 930.3 and related state case law, such as *State ex rel. Melinie*, 665 So.2d at 1172, and *Cotton*, 45 So.3d at 1030, are both independent and adequate state law grounds for dismissal which bar review of similar claims in a federal habeas corpus proceeding. *Hull v. Stalder*, 234 F.3d 706, 2000 WL 1598016, at *1 (5th Cir. Sep. 28, 2000) (Art. 930.3, *State ex rel. Melinie*) (Table, Text in Westlaw); *Taylor v. Cain*, No. 07-3929, 2008 WL 4186883, at *16

(E.D. La. Sep. 10, 2008); *Williams v. Cain*, No. 05-0710, 2008 WL 3363562, at *8 (E.D. La. Aug. 8, 2008); *Madina v. Cain*, No. 05-2126, 2006 WL 2726506, at *3 (E.D. La. Sep. 20, 2006); *Johnson v. Andrews*, No. 05-0413, 2006 WL 2294864, at *4 (E.D. La. Aug. 4, 2006); *Williams v. Miller*, No. 05-0086, 2006 WL 2087867, at *9 (E.D. La. Jul. 24, 2006); *Dedmond v. Cain*, No. 03-3375, 2005 WL 1578086, at *8 (E.D. La. Jun. 30, 2005); *Neal v. Kaylo*, No. 01-2211, 2001 WL 1195879, at *1 (E.D. La. Oct. 10, 2001); *Leonard v. Hubert*, No. 00-0511, 2001 WL 333123, at *1 (E .D. La. Apr. 4, 2001) (Schwartz, J.); *Marshall v. Hubert*, No. 00-0334, 2000 WL 1059820, at *1 (E.D. La. Jul. 31, 2000); *Ardis v. Cain*, No. 99-1862, 1999 WL 997497, at *1 (E.D. La. Oct. 29, 1999).

For the foregoing reasons, the bars imposed on Edwards's post-conviction claims arising from her multiple offender proceedings, including ineffective assistance of counsel during those proceedings, are supported by the record and are adequate to foreclose review by this federal court. Because the Louisiana courts' decisions rested on independent and adequate state rules of procedural default, this court will not review these claims unless Edwards establishes one of the following exceptions.

## 1.   Cause and Prejudice

A federal habeas petitioner may be excepted from the procedural default rule only if she can show "cause" for her default and "prejudice attributed thereto," or demonstrate that the federal court's failure to review the defaulted claim will result in a "fundamental miscarriage of justice." *Glover*, 128 F.3d at 902 (citing *Coleman*, 501 U.S. at 731-32); *Amos*, 61 F.3d at 338-39 (citing *Harris*, 489 U.S. at 262; *see Engle v. Isaac*, 456 U.S. 107, 128-29 & n.33 (1982))

To establish cause for a procedural default, a petitioner must demonstrate that some objective factor external to the defense impeded her efforts to comply with the state's procedural rule. *Murray*

*v. Carrier*, 477 U.S. 478, 488 (1986). The mere fact that petitioner or her counsel failed to recognize the factual or legal basis for a claim, or failed to raise the claim despite recognizing it, does not constitute cause for a procedural default. *Id*. at 486; *see also Martinez v. Ryan*, __ U.S. __, 132 S. Ct. 1309, 1316 (2012) (discussing when counsel's error may be cause to overcome a procedural default) (citing *Coleman*, 501 U.S. at 753, 755).

In this case, Edwards did not file a traverse or offer any cause for the default which would excuse the procedural bars imposed by the Louisiana courts and raised by the respondent in this court. As will be discussed later in this report, her contentions regarding the applicability of *Martinez* are factually and legally incorrect and do not provide any cause or establish presumptive prejudice in her case. The Court's review of the record does not support a finding that any factor external to the defense prevented her from raising the claims in a procedurally proper manner. The record also does not reflect any action or inaction on the part of the State which prevented her from doing so.

"The failure to show 'cause' is fatal to the invocation of the 'cause and prejudice' exception, without regard to whether 'prejudice' is shown." *Hogue v. Johnson*, 131 F.3d 466, 497 (5th Cir. 1997) (citing *Engle*, 456 U.S. at 134 n.43). Having failed to show an objective cause for her default, the court need not determine whether prejudice existed, and petitioner has not alleged any actual prejudice. *Ratcliff v. Estelle*, 597 F.2d 474, 477-78 (5th Cir. 1979) (citing *Lumpkin v. Ricketts*, 551 F.2d 680, 681-82 (5th Cir. 1977)).

Edwards's defaulted claims are therefore procedurally barred from review by this federal habeas corpus court. *See Trest v. Whitley*, 94 F.3d 1005, 1008 (5th Cir. 1996) (habeas review precluded when petitioner neglected to allege actual prejudice and cause of failure to comply with

state procedural rule concerning time restriction on filing for state post-conviction relief), *vacated on other grounds*, 522 U.S. 87 (1998).[24]

## 2.     <u>Fundamental Miscarriage of Justice</u>

Edwards may avoid this procedural bar only if a fundamental miscarriage of justice will occur if the merits of her claim are not reviewed.  *Hogue*, 131 F.3d at 497 (citing *Sawyer v. Whitley*, 505 U.S. 333, 339 (1992)).  To establish a fundamental miscarriage of justice, petitioner must provide this court with evidence that would support a "colorable showing of factual innocence." *Kuhlmann v. Wilson*, 477 U.S. 436, 454 (1986); *accord Murray*, 477 U.S. at 496; *Glover*, 128 F.3d at 902.  To satisfy the factual innocence standard, petitioner must establish a fair probability that, considering all of the evidence now available, the trier of fact would have entertained a reasonable doubt as to the defendant's guilt.  *Campos v. Johnson*, 958 F. Supp. 1180, 1195 (W.D. Tx. 1997) (footnote omitted); *Nobles*, 127 F.3d at 423 n.33 (actual innocence factor requires a showing by clear and convincing evidence that "but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.").  When the petitioner has not adequately asserted her actual innocence, her procedural default cannot be excused under the "fundamental miscarriage of justice" exception.  *Glover*, 128 F.3d at 903.

Edwards does not present any claim and the record contains nothing to suggest or establish her actual innocence on the underlying conviction or in regard to the multiple bill.  Her claims instead address alleged procedural and evidentiary failings in the multiple bill proceedings and not her actual innocence.  She presents no evidence or argument of the kind of actual innocence that

---

[24]The Supreme Court vacated the Fifth Circuit's opinion on grounds that a court of appeals is not <u>required</u> to raise the procedural default argument *sua sponte* but may do so in its discretion.  *Id.*

would excuse her procedural default.  She, therefore, has failed to overcome the procedural bar to her claims.

Edwards's claims challenging the multiple offender proceedings, including ineffective assistance of counsel therein (Claim Nos. 2(a),(c) and 4), are procedurally barred and should be dismissed with prejudice.  The Court will address the substance of the remaining claims.

## V.   <u>Standards of Review of the Merits</u>

### A.   <u>Claims Addressed on the Merits by the State Courts</u>

The AEDPA standard of review is governed by § 2254(d) and the Supreme Court's decision in *Williams v. Taylor*, 529 U.S. 362 (2000).  It provides different standards for questions of fact, questions of law, and mixed questions of fact and law.

A state court's determinations of questions of fact are presumed correct and the court must give deference to the state court findings unless they were based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.  28 U.S.C. § 2254(d)(2) (2006); *see Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir. 2000), *cert. denied*, 532 U.S. 1039 (2001). The amended statute also codifies the "presumption of correctness" that attaches to state court findings of fact and the "clear and convincing evidence" burden placed on a petitioner who attempts to overcome that presumption.  28 U.S.C. § 2254(e)(1) (2006).

A state court's determination of questions of law and mixed questions of law and fact are reviewed under § 2254(d)(1), as amended by the AEDPA.  The standard provides that deference be given to the state court's decision unless the decision is "contrary to or involves an unreasonable application of clearly established federal law" as determined by the United States Supreme Court. *Hill*, 210 F.3d at 485.

A state court's decision can be "contrary to" federal law if: (1) the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law; or (2) the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams*, 529 U.S. at 405-06, 412-13; *Penry v. Johnson*, 532 U.S. 782, 792-93 (2001); *Hill*, 210 F.3d at 485. A state court's decision can involve an "unreasonable application" of federal law if it either: (1) correctly identifies the governing rule but then applies it unreasonably to the facts; or (2) extends or fails to extend a clearly established legal principle to a new context in a way that is objectively unreasonable. *Williams*, 529 U.S. at 406-08, 413; *Penry*, 532 U.S. at 792.

The Supreme Court in *Williams* did not specifically define "unreasonable" in the context of decisions involving unreasonable applications of federal law. *See Williams*, 529 U.S. at 410. The Court, however, noted that an unreasonable application of federal law is different from an incorrect application of federal law. *Id.* "'[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the state-court decision applied [a Supreme Court case] incorrectly.'" *Price v. Vincent*, 538 U.S. 634, 641 (2003) (quoting *Woodford v. Visciotti*, 537 U.S. 19, 24-25 (2002)) (brackets in original); *Bell v. Cone*, 535 U.S. 685, 699 (2002)).

Thus, under the "unreasonable application" determination, the Court need not determine whether the state court's reasoning is sound, rather "the only question for a federal habeas court is whether the state court's determination is objectively unreasonable." *Neal v. Puckett*, 286 F.3d 230, 246 (5th Cir. 2002). The burden is on the petitioner to show that the state court applied the precedent to the facts of her case in an objectively unreasonable manner. *Price*, 538 U.S. at 641 (quoting *Woodford*, 537 U.S. at 24-25); *Wright v. Quarterman*, 470 F.3d 581, 585 (5th Cir. 2006). In

addition, review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits. *Cullen v. Pinholster*, __ U.S. __, 131 S. Ct. 1388, 1398 (2011).

### B.   Claim Not Addressed on the Merits by the State Courts

The AEDPA's deferential standard of review applies only to claims adjudicated on the merits by the state courts. 28 U.S.C. § 2254(d). As mentioned previously, Edwards's claim that the imposition of a procedural bar was contrary to the Supreme Court's ruling in *Martinez* was not presented to or addressed by the state courts. With respect to claims that are not adjudicated on the merits in state court, the deferential AEDPA standards of review do not apply. *Henderson v. Cockrell*, 333 F.3d 592, 597 (5th Cir. 2003). Instead, the federal courts review those claims under the pre-AEDPA *de novo* standards of review. *Id.*, at 598 (citing *Jones v. Jones*, 163 F.3d 285, 299-300 (5th Cir. 1998) (applying *de novo* standard of review to ineffective assistance of counsel claims that were raised in state court, but not adjudicated on the merits)); *see also*, *Carty v. Thaler*, 583 F.3d 244, 253 (5th Cir. 2009). Because Edwards's *Martinez* claim was not addressed by the state courts, this Court will consider the claim *de novo*.

### VI.   Excessive Sentence (Claim No. 1)

Edwards alleges that her 35-year prison sentence for vehicular homicide is excessive because the state trial court restricted her parole eligibility for the entire sentence contrary to Louisiana statutory law. Edwards claims that the sentence for vehicular homicide provides a maximum limit on her parole eligibility at 30 years. The State argues that Edwards challenge is to the application of state law and fails to present a cognizable federal habeas claim.

Edwards raised this claim on direct appeal to the Louisiana First Circuit. The Court decided to review the claim only as a challenge to the legality of the sentence, rather than to its

excessiveness, because Edwards failed to file a motion to reconsider, citing to La. Code Crim. P. art. 881.1(A) and *State v. Caston*, 914 So.2d 122, 135 (La. App. 2d Cir. 2005).  In doing so, the Court recognized that Louisiana's habitual offender laws restricted probation and suspension of sentence, but do not restrict parole eligibility, citing La. Rev. Stat. Ann. § 15:529.1(G).  In addition, parole restrictions are determined by the statute for the underlying offense, in this case La. Rev. Stat. Ann. § 14:32.1 for vehicular homicide.  Under that provision, at least three (3) years of the sentence for vehicular homicide was to be imposed without benefit of parole, probation, or suspension of sentence.  The Court concluded that this allowed for the state trial court to restrict parole eligibility for the entire term.  The Court therefore held that Edwards's habitual offender sentence of 35 years in prison without benefit of parole was not illegal.  This was the last reasoned opinion on the issue. *Ylst*, 501 U.S. at 802.

As an initial matter, the state courts' compliance with Louisiana's sentencing laws is not a matter to be addressed on federal habeas review.  *Butler v. Cain*, 327 F. App'x 455, 457 (5th Cir. 2009).  Instead, federal courts accord broad discretion to a state court's sentencing decision that falls within statutory limits.  *Haynes v. Butler*, 825 F.2d 921, 923-24 (5th Cir. 1987); *Turner v. Cain*, 199 F.3d 437 (5th Cir. 1999) (unpublished) (sentence was within Louisiana statutory limits and within trial court's discretion, therefore petitioner failed to state cognizable habeas claim for excessive sentence).  As resolved by the Louisiana First Circuit, Edwards's sentence and her parole restriction are within statutory limits proscribed by Louisiana law.

When a sentence is within the statutory limits, a federal habeas court will not upset the terms of the sentence unless it is shown to be grossly disproportionate to the gravity of the offense.  *See Harmelin v. Michigan*, 501 U.S. 957, 993-95 (1991); *Solem v. Helm*, 463 U.S. 277, 290-91 & n.17

(1983).  In this case, however, Edwards has never and still does not contend that the sentence was disproportionate to the circumstances surrounding the horrific bodily destruction and death of Roland Withers.  Her only challenge is that the parole restriction exceeded that allowed by Louisiana law.  As stated above, that is not an issue for this Court to consider on federal habeas review.

Having failed to allege or establish that her sentence is disproportionate to the crime, there is still nothing for this Court to review.  For it is well settled that, if the sentence is not "grossly disproportionate," in the first instance, the inquiry is finished.  *United States v. Gonzales*, 121 F.3d 928 (5th Cir. 1997), *cert. denied*, 522 U.S. 1063 (1998).

Edwards has failed to present a cognizable federal claim or that the state courts' denial of relief on this issue was contrary to established Supreme Court case law, or an unreasonable application of, Supreme Court precedent.  She is not entitled to relief on this claim.

## VII.   Ineffective Assistance of Counsel (Claim Nos. 2(b), (c) and 6)

Edwards alleges that she was denied the effective assistance of counsel when her counsel (a) failed to produce evidence to establish her prior conviction was invalid,[25] (b) induced her to enter a plea under false pretenses and promises that she would not be multiple billed, and (c) failed to investigate the evidence related to the plea, sentencing, and multiple bill proceedings.  She further argues that it was contrary to United States Supreme Court holding in *Martinez*, 132 S. Ct. at 1309, for the state courts to procedurally bar her ineffective assistance of trial counsel claims raised on post-conviction review.

The State raised the procedural default defense which the Court has already addressed and recognized as a basis to dismiss the ineffective assistance of counsel claims related to the multiple

---

[25]As noted above, in support of this claim Edwards also argued that the state trial court failed to advise of her rights prior to accepting the plea to the multiple bill.

offender proceeding.  The State further argues that Edwards's remaining ineffective assistance of counsel claims are without merit.  Before reaching those claims, the Court will address the impact of the *Martinez* decision on the state imposed procedural bar previously addressed.

    **A.**    **The _Martinez_ Decision**

The Court has already addressed the procedural default of Edwards's ineffective assistance of counsel claims (Claim No. 2(a),(c)) related to the multiple offender proceeding.  As mentioned therein and for the following reasons, the state courts' procedural denial of relief was not contrary to the holding in *Martinez*.

As an initial matter, Edwards is incorrect in suggestion that the state courts denied her claims of ineffective assistance of counsel related to her guilty plea to the underlying felonies as procedurally barred from review.  To the contrary, the state courts only barred from review those claims related to the multiple offender proceedings.  The courts denied relief on the remaining claims, because of Edwards's failure to meet the required burden of proof under Louisiana law.

For this reason, this federal court is not barred from review of her claims of ineffective assistance of counsel claims other than those related to the multiple offender proceeding, as the Court has already thoroughly discussed.  The Court will consider those claims in the following section of this report.

To the extent Edwards also contends it is unconstitutional for Louisiana law to prohibit post-conviction review of her claim that counsel provided ineffective assistance during the multiple bill hearing and sentencing, her reliance on *Martinez* is misplaced.[26]  Her ineffective assistance claims

---

[26]This is Edwards's unexhausted claim addressed previously.  Because the claim was not specifically presented to the state courts and those courts did not have the opportunity to consider it.  The Court's consideration of this claim is *de novo*.

were raised for the first time in her state application for post-conviction review and those related to the multiple offender proceeding were eventually procedurally barred. The bar was imposed pursuant to La. Code Crim. P. art. 930.3 which prohibits post-conviction review of sentencing errors, including ineffective assistance of counsel during sentencing and which has been extended by the Louisiana Supreme Court to multiple offender proceedings. The procedural bar imposed on Edwards's claims of ineffective assistance of counsel at the multiple offender proceedings is not in conflict with the recent Supreme Court's holding in *Martinez*.

In *Martinez*, the Supreme Court discussed the long-standing holding in *Coleman*, 501 U.S. at 752, that habeas petitioners have no constitutional right to counsel on post-conviction review and that deficient performance by post-conviction counsel does not excuse a procedural default. The Supreme Court carved out an exception to that rule in situations in which a state defendant is barred from raising an ineffective assistance of <u>trial</u> counsel claim at the initial level of review for raising such a claim:

> Where, under state law, claims of ineffective assistance of trial counsel must be raised in an initial-review collateral proceeding, a procedural default will not bar a federal habeas court from hearing a substantial claim of ineffective assistance at trial if, in the initial-review collateral proceeding, there was no counsel or counsel in that proceeding was ineffective.

*Martinez*, 132 S. Ct. at 1320.

The Supreme Court was careful to note that its ruling was limited to situations in which state law prohibits a defendant from raising an ineffective assistance of trial counsel claim in a proceeding in which he is not entitled to counsel. *Id*., at 1319-20. Thus, the *Martinez* rule applies <u>only</u> to claims of ineffective assistance of counsel at trial that were procedurally defaulted and when there was lack of, or ineffective assistance by, counsel during initial collateral review proceeding.

The Supreme Court defined an "initial-review collateral proceeding" as "the first designated proceeding for a prisoner to raise a claim of ineffective assistance at trial." *Id*., at 1315, 1317. The Court held that, in states where a claim of ineffective assistance of counsel at trial can <u>not</u> be raised on direct appellate review,[27] The Constitution would require assistance of counsel at the first level of review of that claim in any collateral or post-conviction proceedings before the state courts can impose a procedural bar. *Id*., at 1319-20.

Edwards here has raised several claims of ineffective assistance of counsel during the multiple offender proceeding. Although the *Martinez* Court did not specifically address a bar imposed upon a claim arising from a sentencing enhancement proceeding, *Martinez* would not apply to Edwards's claim.

The Supreme Court made clear that its holding in *Martinez* only applied when "the State <u>barred</u> the defendant from raising the claims on direct appeal," so that collateral post-conviction proceedings were the petitioner's <u>first</u> opportunity to present the ineffective assistance of trial counsel claim. *Id*., at 1320. Louisiana law, however, did not bar Edwards from raising on direct

---

[27]Louisiana does not strictly "bar" review of ineffective assistance of trial counsel claims on direct appeal. Louisiana, like Texas, allows a prisoner to raise ineffective assistance of counsel on direct appeal "when the record contains sufficient evidence to decide the issue and the issue is properly raised by assignment of error on appeal." *State v. Brashears*, 811 So.2d 985 (La. App. 5 Cir. 2002). *See also State v. Williams*, 738 So.2d 640, 651-52 (La. App. 5 Cir. 1999) ("Ineffective assistance of counsel claims are most appropriately addressed on application for post conviction relief, rather than on direct appeal, so as to afford the parties adequate opportunity to make a record for review. However, when an ineffective assistance claim is properly raised by assignment of error on direct appeal and the appellate record contains sufficient evidence to evaluate the claim, the reviewing court may address the ineffective assistance claim in the interest of judicial economy.").
*Ibarra v. Thaler*, 687 F.3d 222, 230 (5th Cir. 2012) (Graves, J., concurring in part and dissenting in part); *see also*, *State v. Dauzart*, 89 So.3d 1214, 1221 (La. App. 4th Cir. 2012) (citing *State v. Peart*, 621 So.2d 780 (La. 1993); *State v. Truitt*, 500 So.2d 355 (La. 1987)) ("Although claims of ineffective assistance of counsel are most appropriately addressed through an application for post-conviction relief rather than direct appeal, where the record contains sufficient evidence to decide the issue, an ineffective assistance of counsel claim may be addressed on direct appeal in the interest of judicial economy."); *but see*, *Lindsey v. Cain*, 476 F. App'x 777, 778 (5th Cir. 2012) (Using the incorrect reference that "Louisiana[] requires that a prisoner raise an ineffective assistance of counsel claim on collateral review . . . .").

appeal her claims of ineffective assistance of counsel during the habitual offender proceeding.  In fact, the opposite is true; Louisiana law <u>required</u> that she assert her claims on direct appeal or be faced with a bar to its review if raised in a post-conviction application.  *State v. Nelson*, No. 2010-KA-1445, 2011 WL 9165413, at *1 (La. App. 4th Cir. Apr. 27, 2011) (citing *State ex rel. Melinie*, 665 So.2d at 1172) (claim of ineffective assistance of counsel at sentencing is considered on direct appeal because it is not available on post-conviction review).

As already discussed, La. Code Crim. P. art. 930.3 and related Louisiana case law prohibit post-conviction review of challenges to sentencing errors, including those raising claims of ineffective assistance of counsel during sentencing, and that prohibition has been extended to multiple offender proceedings.  *Thomas*, 19 So.3d at 466; *see State v. Dauzart*, 89 So.3d 1214, 1222 (La. App. 4th Cir. 2012) (alleged ineffective assistance of counsel "must be addressed on appeal because sentencing errors are not reviewable post-conviction"); *Cotton*, 45 So.3d at 1030 (same as to ineffective assistance of counsel during multiple offender proceedings); *Wallace*, 2009 WL 3367052, at *14 (same).

In *Cotton*, the Louisiana Supreme Court explained that, under Louisiana law, "an habitual offender adjudication . . . constitutes sentencing for purposes of *Melinie* and La. C. Cr. P. art. 930.3, which provides no vehicle for post-conviction consideration of claims arising out of habitual offender proceedings, as opposed to direct appeal of the conviction and sentence." *Cotton*, 45 So.3d at 1030.  The Court reiterated that Louisiana law prohibits <u>post-conviction review</u> of habitual offender proceedings, including claims of ineffective assistance of counsel related to that proceeding.  *Id.*, at 1030-31.  The Court specifically indicated that such claims are appropriately

considered on direct appeal, citing La. Code Crim. P. art. 912(C)(1), which provides for direct appeal of the judgment that imposes sentence. *Id*. at 1031.

Thus, under Louisiana law, direct appeal was Edwards's initial opportunity to raise her claims of ineffective assistance of counsel at the multiple bill proceeding. *See Cotton v. Cooper*, No. 11-0231, 2011 WL 5025311, at *11 (E.D. La. Sep. 14, 2011) (Moore, M.J.) ("Sentencing issues, including claims of ineffective assistance of counsel during sentencing, may be challenged in [Louisiana] state court via direct appeal."), *report adopted*, 2011 WL 5025295, at *1 (E.D. La. Oct. 21, 2011) (Africk, J.); *Nelson*, 2011 WL 9165413, at *1 (claim of ineffective assistance of counsel at sentencing is to be considered on direct appeal because it is not available on post-conviction review); *State v. Smith*, 734 So.2d 826, 834-35 (La. App. 4th Cir. 1997) (addressing on direct appeal defendant's claim of sentencing-related ineffective assistance of counsel); *State v. Burns*, 723 So.2d 1013, 1016-17 (La. App. 4th Cir. 1998) (same). There was <u>no</u> state law prohibiting Edwards from raising her sentencing-related ineffective assistance of counsel claim on direct appeal where she was represented by appointed counsel; and, had she done so, consideration of the claim on federal habeas review would not have been barred. *See*, *e.g.*, *State v. Dudley*, No. 2012-0640, 2012 WL 5383089, at *3-*4 (La. App. 1st Cir. Nov. 2, 2012) (addressing on direct appeal merits of claim of ineffective assistance of counsel for counsel's failure to challenge validity of prior conviction at habitual offender adjudication); *State v. Staden*, No. 2011-1455, 2012 WL 1564592, at *11 (La. App. 1st Cir. May 3, 2012) (same); *State v. Jones*, 35 So.3d 1162, 1166-68 (La. App. 5th Cir. 2010) (same); *State v. Jackson*, 4 So.3d 131, 133-34 (La. App. 4th Cir. 2009) (same).

For these reasons, the *Martinez* ruling does not compromise or impact the procedural bar imposed upon Edwards's post-conviction claims of ineffective assistance of counsel during the

multiple bill proceeding.  Louisiana law did not bar and indeed required her to raise the claims on direct appeal, which she did not do.  Her ability to raise the claims on direct appeal precludes the equitable relief provided in *Martinez*.  She also was represented by counsel on direct appeal and has not challenged appellate counsel's performance in any court.  *See Edwards v. Carpenter*, 529 U.S. 446, 452-54 (2000) (addressing claims of ineffective assistance of counsel as cause for procedural default).

The imposition of the procedural bar to Edwards's ineffective assistance of counsel claims arising from the multiple offender proceedings was not a violation of *Martinez*.  Edwards is not entitled to relief on this issue.

### B.    <u>Counsel's Performance During the Guilty Plea Proceedings</u>

Edwards remaining claims of ineffective assistance of counsel urge that her counsel was ineffective when he coerced her into entering a guilty plea to vehicular homicide and possession of cocaine under false pretenses and promises that she would not be multiple billed, and when he failed to investigate the evidence related to those crimes before urging her to enter the plea.  With regard to the latter argument, Edwards contends that counsel should have examined the DNA and toxicology reports to determine the apparent conflict between them.  Specifically, she argues that the DNA report showed that no drugs were detected in her system in conflict with the Intoxilyzer test showed a reading of .095 BAC.  She also contends that the arresting officers failed to obtain her signature on the consent form or that she agreed to take the test.

As repeated above, Edwards raised these arguments on state post-conviction review, which was denied at each level of the state courts.  The State argues that Edwards's claims are meritless and that the denial of relief was not contrary to Supreme Court law.

The issue of ineffective assistance of counsel is a mixed question of law and fact. *Clark v. Thaler*, 673 F.3d 410, 416 (5th Cir. 2012); *Woodfox v. Cain*, 609 F.3d 774, 789 (5th Cir. 2010). The question for this Court is whether the state courts' denial of relief was contrary to, or an unreasonable application of, federal law as determined by the Supreme Court.

The Supreme Court's holding in *Strickland v. Washington*, 466 U.S. 668 (1984), is the appropriate standard for judging the performance of counsel when a defendant enters a plea of guilty. *Hill v. Lockhart*, 474 U.S. 52, 58 (1985). In *Strickland*, the Court established a two-part test for evaluating claims of ineffective assistance of counsel in which the petitioner must prove deficient performance and prejudice therefrom. *See Strickland*, 466 U.S. at 697. The petitioner has the burden of proving ineffective assistance of counsel by a preponderance of the evidence. *Montoya v. Johnson*, 226 F.3d 399, 408 (5th Cir. 2000); *Jernigan v. Collins*, 980 F.2d 292, 296 (5th Cir. 1992). In deciding ineffective assistance claims, a court need not address both prongs of the conjunctive *Strickland* standard, but may dispose of such a claim based solely on a petitioner's failure to meet either prong of the test. *Amos*, 61 F.3d at 348.

Applying *Strickland* under *Hill* in the context of a plea, the deficiency prong is satisfied by a showing that "counsel's representation fell below an objective standard of reasonableness." *Hill*, 474 U.S. at 57 (citing *Strickland*, 466 U.S. at 687-88). "[I]t is necessary to 'judge . . . counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct.'" *Lockhart v. Fretwell*, 506 U.S. 364, 371 (1993) (quoting *Strickland*, 466 U.S. at 690). Petitioner must overcome a strong presumption that the conduct of his counsel falls within a wide range of reasonable representation. *Harrington v. Richter*, __ U.S. __, 131 S. Ct. 770, 787 (2011) (citing *Strickland*, 466 U.S. at 689). "[I]t is all too easy to conclude that a particular act or omission of

counsel was unreasonable in the harsh light of hindsight." *Bell*, 535 U.S. at 697 (citing *Strickland*, 466 U.S. at 689).

To prove prejudice, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Bell*, 535 U.S. at 694; *United States v. Kimler*, 167 F.3d 889, 893 (5th Cir. 1999). In the context of a guilty plea, "[i]n order to satisfy . . . [*Strickland*'s] 'prejudice' requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill*, 474 U.S. at 59. Furthermore, "[t]he petitioner must 'affirmatively prove,' and not just allege, prejudice." *Day v. Quarterman*, 566 F.3d 527, 536 (5th Cir. 2009) (quoting *Strickland*, 466 U.S. at 695). In this context, "a reasonable probability is a probability sufficient to undermine confidence in the outcome." *Cullen*, 131 S. Ct. at 1403 (quoting *Strickland*, 466 U.S. at. 694). This standard requires a "substantial," not just "conceivable," likelihood of a different result. *Harrington*, 131 S. Ct. at 792. Thus, conclusory allegations with no showing of effect on the proceedings do not raise a constitutional issue sufficient to support federal habeas relief. *Miller v. Johnson*, 200 F.3d 274, 282 (5th Cir. 2000) (citing *Ross v. Estelle*, 694 F.2d 1008, 1012 (5th Cir. 1983)).

On habeas review, the United States Supreme Court has clarified that, in applying *Strickland*, "[t]he question is whether an attorney's representation amounted to incompetence under prevailing professional norms, not whether it deviated from best practices or most common custom." *Harrington*, 131 S. Ct. at 788. The *Harrington* Court went on to recognize The high level of deference owed to a state court's findings under *Strickland* in light of AEDPA standards of review:

> The standards created by *Strickland* and §2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so. The *Strickland* standard is a

general one, so the range of reasonable applications is substantial. Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard.

*Id.* at 788 (citations and quotation marks omitted).

Thus, scrutiny of counsel's performance under § 2254(d) therefore is "doubly deferential." *Cullen*, 131 S. Ct. at 1403 (quoting *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009)). The federal courts must take a "highly deferential" look at counsel's performance under the *Strickland* standard through the "deferential lens of § 2254(d)." *Id.* (citing *Strickland*, 466 U.S. at 689, and quoting *Knowles*, 556 U.S. at 121 n.2). In the instant case, Edwards failed to establish that her counsel's performance was objectively unreasonable or deficient under the circumstances of her case.

### 1. Advice to Plea and Notice of the Filing of a Multiple Bill

Edwards first claims that her counsel led her to believe that if she entered a guilty plea to vehicular homicide and possession of cocaine, the State would not pursue a multiple bill. The record, however, belies this contention.[28]

> BY THE COURT:     Mr. Liberto, have you also explained to the defendant the fact that these felony convictions may be used in a subsequent multiple bill?
>
> BY MR. LIBERTO:   Yes, Your Honor. In fact, I have advised her that there probably will or there will be a multiple offender filed.
>
> BY THE COURT:     Okay. And she understands that the convictions that she is pleading guilty to today will be used as part of that multiple bill filing.
>
> BY MR. LIBERTO:   Yes, ma'am.
>
> BY THE COURT:     Is that correct, Ms. Edwards?
>
> BY MS. EDWARDS:       Yes, ma'am.

---

[28]St. Rec. Vol. 1 of 3, Plea Transcript, pp. 118-19, 8/18/09.

The record therefore reflects that Edwards counsel did in fact notify her that a multiple bill would be filed by the State.  Edwards acknowledged her understanding that it would be filed and that her new convictions would be used in that multiple bill.  The record does not support her contention that she would not have entered the plea since she already knew that a multiple bill would be filed.

In addition, the record reflects that the bill was filed at the same hearing while Edwards was present.[29]  She entered a plea of not guilty that same day pending the hearing on the bill.  Her knowledge of the State's intent to pursue the multiple bill prior to entry of her guilty plea to the underlying felonies is established by the record.  She has not provided factual support for her contention that counsel failed to so notify her or that she was prejudiced by his actions.

Without a showing of a deficient performance or prejudice arising therefrom, she has not established her entitlement to relief under *Strickland* or *Hill*.

### 2.    <u>Investigation of Facts Underlying the Charges</u>

Edwards also argues that counsel failed to investigate the basis of the charges before advising her to enter the plea.  A petitioner "'who alleges a failure to investigate on the part of his counsel must allege with specificity what the investigation would have revealed and how it would have altered the outcome of the trial.'"  *Gregory v. Thaler*, 601 F.3d 347, 352 (5th Cir. 2010) (quoting *United States v. Green*, 882 F.2d 999, 1003 (5th Cir. 1989)); *Moawad v. Anderson*, 143 F.3d 942, 948 (5th Cir. 1998).  The petitioner must provide factual support demonstrating what <u>exculpatory</u> evidence further investigation would have revealed.  *Moawad*, 143 F.3d at 948; *Brown v. Dretke*, 419 F.3d 365, 375 (5th Cir. 2005); *Davis v. Cain*, No. 07-6389, 2008 WL 5191912, at *10 (E.D. La.

---

[29]*Id.*, at p. 125-127.

Dec. 11, 2008) (order adopting referenced Report and Recommendation). A petitioner cannot show prejudice as to a claim that his counsel failed to investigate without adducing what the investigation would have shown and that the outcome would have been different as a result. *Diaz v. Quarterman*, 239 F. App'x 886, 890 (5th Cir. 2007) (citing *Strickland*, 466 U.S. at 696). For these reasons, brief and conclusory allegations that the attorney's representation was deficient because of a failure to investigate and develop useful evidence will not suffice. *See Anderson v. Collins*, 18 F.3d 1208, 1221 (5th Cir. 1994).

Edwards has not pointed to any exculpatory evidence that could have been located by her counsel that would have prompted her not to enter the guilty plea. She instead focuses on the two toxicology reports. She suggests that the "observation checklist" does not reflect that she signed or authorized the Intoxilyzer 5000 test. Under a broad reading, she apparently contends that counsel could have used these reports to raise reasonable doubt as to her guilt.

The two reports, however, were not inconsistent and she has failed to point to a deficiency in counsel's performance in failing to point out a non-existence distinction. The AIT Laboratories Report also referenced by Edwards indicates that no drugs were found in her system.[30] The report does not indicate that it tested for alcohol or for a blood alcohol content. The report served no purpose to challenge the level of alcohol in her system, which is the theory upon which the State relied in charging vehicular homicide. Furthermore, as Edwards concedes, the Intoxilyzer test results show that her blood alcohol percentage was .095, which is above the legal limit.[31] Thus, one

---

[30] St. REc. Vol. 1 of 3, AIT Laboratories Report, 5/19/09.

[31] St. Rec. Vol. 2 of 3, Alcohol Test Exhibits and Results, 10/20/08.

test showed no narcotic or drug presence while the other established her alcohol intoxication.  There

is not conflict or inconsistency for counsel to have addressed.

Edwards also argues that counsel should have noted that the "observation checklist" does

not indicated that she signed the standardized form required under La. Rev. Stat. Ann. § 32:661

showing her consent to the chemical test.[32]  Edwards has not provided the court (or the state courts

below) with a copy of the standardized form or the "observation checklist" to which she refers.  She

has instead relied upon copies of several other documents also appearing in the state court records

as attachments to her pleadings there.[33]

Her exhibits include the "Initial Observation" sheet showing the officers' notes on the results

of the field sobriety test, none of which Edwards was able to perform.  This sheet does not have a

place for Edwards to have signed nor is the standardized form referenced in the statute.

---

[32]La. Rev. Stat. Ann. § 32:661(C) provides in relevant part as follows:

C. (1)  When a law enforcement officer requests that a person submit to a chemical test as
provided for above, he shall first read to the person a standardized form approved by the
Department of Public Safety and Corrections. The department is authorized to use such language
in the form as it, in its sole discretion, deems proper, provided that the form does inform the person
of the following:

(a)  His constitutional rights under Miranda v. Arizona.

(b)  That his driving privileges can be suspended for refusing to submit to the chemical test.

(c)  That his driving privileges can be suspended if he submits to the chemical test and such test
results show a blood alcohol level of 0.08 percent or above or, if he is under the age of twenty-one
years, a blood alcohol level of 0.02 percent or above.

(d)  That his driving privileges can be suspended if he submits to the chemical test and the test
results show a positive reading indicating the presence of any controlled dangerous substance
listed in R.S. 40:964.

(e)  The name and employing agency of all law enforcement officers involved in the stop,
detention, investigation, or arrest of the person.

(f)  That refusal to submit to a chemical test after an arrest for an offense of driving while
intoxicated if he has refused to submit to such test on two previous and separate occasions of any
previous such violation is a crime under the provisions of R.S. 14:98.2 and the penalties for such
crime are the same as the penalties for first conviction of driving while intoxicated.

(2)  In addition, the arresting officer shall, after reading said form, request the arrested person to
sign the form. If the person is unable or unwilling to sign, the officer shall certify that The arrestee
was advised of The information contained in The form and that The person was unable to sign or
refused to sign.

[33]St. Rec. Vol. 2 of 3, Alcohol Test Results and Exhibits, 10/20/08.

She also attached a copy of the traffic citation she was issued.  The signature line on the summons portion of the citation was not signed by Edwards because the officer noted she had already been "placed in jail."[34]

The "Intoxilyzer 5000 Operations Check List" indicates that the officer made all of the preliminary checks on the machine used to conduct Edwards's alcohol breath test.  Again, there is no place on that form for anyone to have signed and it is not the same as the form referenced in the statute.

Finally, Edwards provided the courts with a copy of the Intoxilyzer test results showing her .095 blood alcohol results.  Again, there is no signature needed on this result report.

Nevertheless, Louisiana law provides that, when a person drives a car on a public roadway, she "shall be deemed to have given consent . . . to a chemical test or tests of his blood, breath, urine, or other bodily substance for the purpose of determining the alcoholic content of his blood . . . ." La. Rev. Stat. Ann. § 32:661(A)(1).  Louisiana law provides the statutory form in § 32:661(C) to assure notice to an arrestee of her rights to refuse the test and the repercussions for doing so. However, the law further provides that, when a serious injury or a fatality is involved, The arrestee "may not refuse to submit to a chemical test or tests. . .."  La. Rev. Stat. Ann. § 32:666(A)(1)(a)(i). The arresting officer is instead authorized to perform the breath test, blood test or other chemical test deemed necessary without need to comply with the form notice provision under § 32:661.  *State v. Leader*, No. 2008-KA-1500, 2009 WL 385610, at *6 (La. App. 1st Cir. Feb. 13, 2009) (any error in the standardized form under § 32:661 is not an issue in the case of serious injury or fatality governed by § 32:666), *writ denied*, 22 So.3d 172 (La. 2009); *see*, *State v. Letell*, 103 So.3d 1129,

---

[34]*Id.*, p. 1.

1147-48 (La. App. 1st Cir. 2012) ("[T]he defendant had no right to refuse to submit to a chemical

test, because there was probable cause to believe he had violated La. R.S. 14:98, and a fatality had

occurred. See La. R.S. 32:666(A)(1)(a)(i). Therefore, no *Miranda* warning was required prior to

the blood test."). The provisions of § 32:666(A)(1)(b) contains its own oral notice requirements for

those persons who by law are not allowed to refuse the chemical testing. *See Leader*, 2009 WL

385610, at *6; *Letell*, 103 So.3d at 1148.

Edwards was clearly a person to whom the provisions of § 32:666(A)(1)(a)(i) applied; there

was most certainly a fatality resulting from the incident and the officers had more than a reasonable

belief that Edwards was driving under the influence of alcohol. For this reason, there was no basis

for her counsel to challenge the form that was not required in her situation. Counsel does not act

deficiently in failing to pursue a baseless challenge to the evidence. *See Smith v. Puckett*, 907 F.2d

581, 585 n. 6 (5th Cir. 1990) ("Counsel is not deficient for, and prejudice does not issue from, failure

to raise a legally meritless claim."); *see also*, *Koch v. Puckett*, 907 F.2d 524, 530 (5th Cir. 1990)

(concluding that "counsel is not required to make futile motions or objections."); *Wood v.

Quarterman*, 503 F.3d 408, 413 (5th Cir. 2007) ("'[f]ailure to raise meritless objections is not

ineffective lawyering; it is the very opposite.'") (quoting *Clark v. Collins*, 19 F.3d 959, 966 (5th Cir.

1994)).

For the foregoing reasons, Edwards has not established that the denial of relief on her

ineffective assistance of trial counsel claims was contrary to, or an unreasonable application of,

*Strickland* or *Hill*. She is not entitled to relief on these claims.

## VIII.  <u>Prosecutorial Misconduct (Claim No. 3)</u>

Edwards claims that the prosecutors failed to provide the defense with exculpatory material evidence in violation of *Brady v. Maryland*, 373 U.S. 83 (1963). She basis this claim on the same argument addressed above regarding the allegedly defective § 32:661 standardized notice form and that the AIT Laboratory results provided no indication that alcohol was in her system.

Edwards raised this issue in her application for post-conviction relief, and relief was denied at each level of the state courts. The State argues that the possession of cocaine conviction was not related to her toxicology report and that the State did not withhold any evidence since there was open file discovery.

A claim under *Brady* is a mixed question of law and fact. *Higgins v. Cain*, 434 F. App'x 405, 406 (5th Cir. 2011) (citing *Banks v. Thaler*, 583 F.3d 295, 309 (5th Cir. 2009)). Under the applicable standard of review, this court therefore must determine if the state court's decision was contrary to or involved an unreasonable application of Supreme Court precedent.

The Supreme Court in *Brady* required the State to produce exculpatory and impeachment evidence for reasons of due process. *Brady*, 373 U.S. at 87. The *Brady* disclosure requirement applies only to evidence that is exculpatory and material to guilt or that is favorable impeachment evidence. *Strickler v. Greene*, 527 U.S. 263, 282 (1999); *Brady*, 373 U.S. at 87. Claims pursuant to *Brady* involve "the discovery, after trial of information which had been known to the prosecution but unknown to the defense." *Lawrence v. Lensing*, 42 F.3d 255, 257 (5th Cir. 1994) (*quoting United States v. Agurs*, 427 U.S. 97, 103 (1976)). Thus, "when information is fully available to a defendant at the time of trial and his only reason for not obtaining and presenting the evidence to the Court is his lack of reasonable diligence, the defendant has no *Brady* claim." *United States v. Brown*, 628 F.2d 471, 473 (5th Cir. 1980) (italics added); *Kutzner v. Cockrell*, 303 F.3d 333, 336

(5th Cir. 2002) (holding that *Brady* does not require prosecutors to furnish a defendant with exculpatory evidence if that evidence is fully available to the defendant through an exercise of reasonable diligence); *Rector v. Johnson*, 120 F.3d 551, 558-59 (5th Cir. 1997) (holding that the State has no duty to lead the defense toward potentially exculpatory evidence if the defendant possesses the evidence or can discover it through due diligence).  *Brady* also does not place any burden upon the prosecution to conduct a defendant's investigation or assist in the presentation of the defense's case.  *United States v. Marrero*, 904 F.2d 251, 261 (5th Cir. 1990) (citations omitted).

Three factors must be considered to evaluate an alleged *Brady* violation: "[1] the evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; [2] the evidence must have been suppressed by the State, either willfully or inadvertently; [and 3] prejudice must have ensued."  *Banks v. Dretke*, 540 U.S. 668, 691 (2004) (quoting *Strickler*, 527 U.S. at 281-82.  Evidence is material under *Brady* "if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different."  *Kyles v. Whitley*, 514 U.S. 419, 433 (1995) (quotation omitted).

In the instant case, Edwards herself concedes that the toxicology reports and forms related to her arrest were available to counsel before the scheduled trial and before she entered her plea. This concession is evidenced by her argument addressed previously that counsel should have scrutinized those documents before advising her to enter a plea.  Thus, she does not demonstrate a *Brady* violation since she does not allege that the State actually withheld the documents.

She instead seems to argue that the State would not have been able to establish her intoxication because the notice form did not indicate her consent to the alcohol test and the AIT Laboratory report did not reflect that alcohol was in her system.  This does not demonstrate a

withholding of evidence.  Rather, it appears to be a veiled attempt to suggest that the evidence would have been insufficient to prove her guilt if she had not entered the guilty plea.

However, for the reasons already discussed, Louisiana law required that the officers comply with the provisions of § 32:666 because of the fatality.  In addition, although the laboratory report did not test for alcohol, the Intoxilyzer report established her .095 BAC reading.  The State had evidence of her alcohol intoxication while driving the car and those documents were available to the defense.

For these reasons, Edwards has failed to establish that the state courts denial of relief on this claim was contrary to, or an unreasonable application of, Supreme Court law.  She is not entitled to relief on this issue.

## IX.    Cumulative Errors (Claim No. 5)

Edwards claims that the errors in her case when considered together demonstrate a violation of her due process rights to a fair trial.  The State argues that Edwards has not established a constitutional violation, there can be no cumulation of error.

The United States Fifth Circuit has recognized that "although rare," "instances of cumulative trial errors may 'fit the Supreme Court's description of a denial of due process as 'The failure to observe that fundamental fairness essential to the very concept of justice.'" *Perez v. Dretke*, 172 F. App'x 76, 81-82 (5th Cir. 2006) (quoting *Derden v. McNeel*, 978 F.2d 1453, 1457 (5th Cir. 1992)).  However, in *Derden*, the Fifth Circuit held that "federal habeas corpus relief may only be granted for cumulative errors in the conduct of a state trial where (1) the individual errors involved matters of constitutional dimension rather than mere violations of state law; (2) the errors were not procedurally defaulted for habeas purposes; and (3) the errors 'so infected the entire trial that the

resulting conviction violates due process.'" *Derden*, 978 F.2d at 1454 (quoting *Cupp v. Naughten*, 414 U.S. 141, 147 (1973)).

In this instance, Edwards has failed to identify any constitutional error arising out of her state court criminal proceedings. Without some cognizable error, she has not provided a basis for the Court to consider any alleged cumulative prejudicial effect. "[W]here individual allegations of error are not of constitutional stature or are not errors, there is 'nothing to cumulate.'" *Turner v. Quarterman*, 481 F.3d 292, 301 (5th Cir. 2007) (quoting *Yohey v. Collins*, 985 F.2d 222, 229 (5th Cir. 1993), and citing *Miller*, 200 F.3d at 286 n.6; *United States v. Hall*, 455 F.3d 508, 520 (5th Cir. 2006)).

The same is true of her claims regarding the assistance of counsel. If the individual claims are meritless, that result cannot be changed simply by asserting the same claims collectively. "[I]neffective assistance of counsel cannot be created from the accumulation of acceptable decisions and actions." *Hall*, 455 F.3d at 520 (citing *Miller*, 200 F.3d at 286 n.6); *Sholes v. Cain*, 370 F. App'x 531, 535 (5th Cir. 2010); *Mullen v. Blackburn*, 808 F.2d 1143, 1147 (5th Cir. 1987) (with respect to cumulation of meritless claims, "Twenty times zero equals zero.").

Accordingly, Edwards has not shown her entitlement to consideration of or relief on the theory of cumulative error arising from the trial court's evidentiary rulings. The denial of relief on this issue was not contrary to, or an unreasonable application of, federal law. She is not entitled to relief on this claim.

## X.   <u>Recommendation</u>

For the foreseeing reasons, it is **RECOMMENDED** that Kimberlin Edwards's petition for issuance of a writ of habeas corpus filed pursuant to 28 U.S.C. § 2254 be **DENIED** and **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation **within fourteen (14) days** after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. *Douglass v. United Servs. Auto. Assoc.*, 79 F.3d 1415, 1430 (5th Cir. 1996).[35]

New Orleans, Louisiana, this 25th day of March, 2014.

_____
**KAREN WELLS ROBY**
**UNITED STATES MAGISTRATE JUDGE**

---

[35]*Douglass* referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.

38